# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
LUISA ALFARO

### DEFENDANTS
CROTHALL HEALTHCARE, INC.

**(b)** County of Residence of First Listed Plaintiff: Lehigh
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Mansour Law, LLC
1101 W. Hamilton St., Ste. 205, Allentown, PA 18101
Tel: (610) 321-3538

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [x] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. § 621, et seq.

Brief description of cause:
ADEA Discrimination & Retaliation

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** _____

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 04/20/2021

SIGNATURE OF ATTORNEY OF RECORD: *William P. Mansour*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____1245 North 15th Street, Allentown, PA 18102_____

Address of Defendant: _____1500 Liberty Ridge Drive, Suite 210, Wayne, PA 19087_____

Place of Accident, Incident or Transaction: _____Bethlehem, Northampton County, PA_____

---

*RELATED CASE, IF ANY:*

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when **Yes** is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes [ ]  No [X]

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes [ ]  No [X]

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes [ ]  No [X]

I certify that, to my knowledge, the within case [ ] is / [X] is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __04/20/2021__   /s/ William P. Mansour   __318833__
                   Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

---

**CIVIL:** (Place a √ in one category only)

A. *Federal Question Cases:*
1. [ ] Indemnity Contract, Marine Contract, and All Other Contracts
2. [ ] FELA
3. [ ] Jones Act-Personal Injury
4. [ ] Antitrust
5. [ ] Patent
6. [ ] Labor-Management Relations
7. [X] Civil Rights
8. [ ] Habeas Corpus
9. [ ] Securities Act(s) Cases
10. [ ] Social Security Review Cases
11. [ ] All other Federal Question Cases
    *(Please specify):* _____

B. *Diversity Jurisdiction Cases:*
1. [ ] Insurance Contract and Other Contracts
2. [ ] Airplane Personal Injury
3. [ ] Assault, Defamation
4. [ ] Marine Personal Injury
5. [ ] Motor Vehicle Personal Injury
6. [ ] Other Personal Injury *(Please specify):* _____
7. [ ] Products Liability
8. [ ] Products Liability – Asbestos
9. [ ] All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____William P. Mansour_____, counsel of record *or* pro se plaintiff, do hereby certify:

[ ] Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[X] Relief other than monetary damages is sought.

DATE: __04/20/2021__   /s/ William P. Mansour   __318833__
                   Attorney-at-Law / Pro Se Plaintiff   Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Luisa Alfaro | : | CIVIL ACTION |
| v. | : | |
| Crothall Healthcare, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.        ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)        ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X)

| 04/20/2021 | William P. Mansour, Esq. | Luisa Alfaro |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (610) 321-3538 | (610) 798-1345 | wpm@themansourfirm.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUISA ALFARO, | |
| Plaintiff, | No. _____ |
| v. | |
| | CIVIL ACTION – LAW |
| CROTHALL HEALTHCARE, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

### COMPLAINT

NOW COMES, Plaintiff LUISA ALFARO ("Plaintiff"), by and through her undersigned counsel, who hereby complains against Defendant CROTHALL HEALTHCARE, INC. ("Defendant") as follows:

### INTRODUCTION

1. This age discrimination and employment retaliation action arises under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Specifically, as set forth in more detail herein, Plaintiff alleges that Defendant discharged her from her employment because of her age and because of her reasonable, good-faith complaints of age and race discrimination, in violation of the foregoing statutes.

### PARTIES

2. Plaintiff is an Asian-American individual currently residing in Allentown, Lehigh County, Pennsylvania. At all times relevant and material hereto, Plaintiff was sixty-one (61) years of age.

3. Defendant is a nationwide provider of healthcare support services, including cleaning and environmental services, with clients in 46 states, including Pennsylvania. Defendant is a Delaware for-profit corporation with its principal place of business located at 1500 Liberty Ridge Drive, Suite 210, Wayne, Pennsylvania, 19087. At all times relevant and material hereto,

Defendant regularly employed at least twenty (20) employees for each working day of at least twenty (20) calendar weeks in 2020 and 2019.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

5. Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because Defendant regularly conducts business within this district.

6. On September 10, 2020, Plaintiff timely filed a Charge of Discrimination against Defendant with the United States Equal Employment Opportunity Commission ("EEOC").

7. On January 29, 2021, the EEOC issued Plaintiff a Notice of Right to Sue, a copy of which is attached hereto as **EXHIBIT A.** This action is being commenced within ninety (90) days of Plaintiff's receipt of that Notice.

8. Plaintiff has satisfied all other conditions precedent to the filing of this action.

## FACTUAL ALLEGATIONS

9. At some point prior to April 2018, Defendant began providing, *inter alia*, cleaning and environmental services to Lehigh Valley Hospital - Muhlenberg in Bethlehem, PA ("LVH").

10. On or about April 23, 2018, Defendant hired Plaintiff as an Operations Manager at LVH. As an Operations Manager, Plaintiff was generally responsible for supervising the housekeepers on her shift to ensure that the facilities she oversaw were properly cleaned and sanitized according to hospital and industry standards.

11. In or around November 2018, Defendant hired Travis Ilhe to be its Director of Housekeeping at LVH. As Director of Housekeeping, Mr. Ilhe had the power to discipline Plaintiff and recommend her termination. Mr. Ilhe also had the power to interview and recommend applicants for employment with Defendant.

12. As Operations Manager, Plaintiff reported directly to the Assistant Director of Housekeeping. From early 2019 through April 2020, Defendant's Assistant Director of Housekeeping at LVH was Jacqueline Velez. Ms. Velez's direct supervisor was Mr. Ilhe.

13. In or around November 2018, and continuing thereafter, there were three (3) Operations Managers at LVH, including Plaintiff. Until approximately January 2020, the other two (2) Operations Managers, "Kritzia" and "Josie," were females approximately 25-35 years of age and substantially younger than Plaintiff. In or around January 2020, Josie separated from her employment and Defendant, at Mr. Ilhe's recommendation and request, replaced her with a male employee named Gracen, who, at the time of his hire, was 25-30 years of age and substantially younger than Plaintiff.

14. From the time of her hire until October 7, 2019, Plaintiff was the 2nd shift Operations Manager. Until early September 2019, she was the only Operations Manager on 2nd shift while Josie and Kritzia worked together on 1st shift.

15. On several occasions prior to June 2019, Plaintiff complained to Mr. Ilhe that she and her team were struggling on 2nd shift because the shift was severely understaffed. Instead of assisting Plaintiff by providing her more staff, Mr. Ilhe criticized Plaintiff's job performance.

16. On or about June 25, 2019, prior to creating the "mid-shift" position, Mr. Ilhe placed Plaintiff on a 30-day Performance Improvement Plan ("PIP") due to alleged performance deficiencies.

17. As part of her PIP, Mr. Ilhe stated that he would meet weekly with Plaintiff to review her performance and provide feedback and guidance. However, neither Mr. Ilhe nor Ms. Velez met with Plaintiff even once during her PIP to review her progress under same. Plaintiff received no feedback or guidance from either of them during the course of her 30-day PIP.

18. Neither of the other substantially younger Operations Managers were placed on a PIP.

19. Because 2nd shift was severely understaffed, and because Plaintiff was performing additional duties due to staffing issues (e.g. payroll, scheduling, etc.), Plaintiff was only able to partially complete the tasks on her PIP, many of which included a lot of paperwork.

20. On or about August 2, 2019, at the direction of Mr. Ilhe, Ms. Velez issued Plaintiff a First Progressive Counseling for failing to timely complete the tasks in her PIP. In her meeting with Ms. Velez, Plaintiff complained that, since she was the only Operations Manager on 2nd shift, it was impossible for her to complete all the paperwork tasks required under the PIP. Ms. Velez agreed.

21. In early September 2019, in an effort to alleviate Plaintiff's complaints about being overwhelmed and understaffed, Defendant created a "mid-shift" Operations Manager position and placed Kritzia in that role. The "mid-shift," from 11:00 am to 8:00 pm, overlapped with portions of 1st and 2nd shift.

22. On or about October 4, 2019, Defendant, by and through Mr. Ilhe, re-assigned Plaintiff to 1st shift, eliminated the "mid-shift" position, re-assigned Kritzia to 1st shift, and re-assigned Josie to 2nd shift. The reason Mr. Ilhe gave Plaintiff for her shift change was that the housekeepers on 2nd shift were allegedly complaining that Plaintiff gave them too much work.

23. About a week later, in an effort to no longer work under Mr. Ilhe, Plaintiff applied to transfer to the Cape May Courthouse Hospital, which was also one of Defendant's clients. Defendant ultimately denied the transfer because of the First Progressive Counseling on Plaintiff's record. When Plaintiff asked Mr. Ilhe why he did not approve the transfer, Mr. Ilhe responded that he contacted the Director of Housekeeping at the Cap May Courthouse Hospital and told him that Plaintiff was "not qualified" for the position and "struggling" in her current role.

24. On or about October 24, 2019, Plaintiff called Defendant's Human Resources Hotline and spoke with a Human Resources representative named Christina. Plaintiff told Christina that she believed Mr. Ilhe issued her First Progressive Counseling and sabotaged her

transfer request due to her age and race. Christina told Plaintiff that she would discuss her concerns with Senior Regional Director Dan Hogan.

25. On or about November 1, 2019, only eight (8) days after Plaintiff complained to Human Resources about his discrimination, Mr. Ilhe suspended Plaintiff, initially without pay.

26. At the time he suspended Plaintiff, Mr. Ilhe was aware that Plaintiff had complained about him to Human Resources.

27. When Plaintiff asked Mr. Ilhe why she was being suspended, he told her it was related to a "safety issue" regarding ICU beds not being timely cleaned at the end of her shift. Mr. Ilhe erroneously believed that fifteen (15) beds remained uncleaned at the end of Plaintiff's shift on October 28, 2019 when, in fact, only two (2) beds remained uncleaned, which far exceeds expectations.

28. On or about November 7, 2019, Christina called Plaintiff and told her that she would not be approved for the transfer, that her First Progressive Counseling would stand, and that Defendant was closing her complaint.

29. Upon information and belief, Defendant did not perform a reasonable, good-faith investigation into Plaintiff's October 24, 2019 complaints of age and race discrimination by Mr. Ilhe.

30. Plaintiff remained suspended for ten (10) days until November 12, 2019, when she was permitted to return to work.

31. Ten (10) days after returning to work, on November 22, 2019, Ms. Velez, at the express direction of Mr. Ilhe, issued Plaintiff a 2nd Progressive Counseling for allegedly neglecting her job duties with respect to the bed cleaning issue. However, instead of writing Plaintiff up for not cleaning beds quick enough, Ms. Velez, at Mr. Ilhe's direction, wrote Plaintiff up for not informing her or Mr. Ilhe how many beds remained uncleaned at the end of her shift.

32. After having a discussion with Plaintiff about the counseling, Mr. Ilhe admitted that he misunderstood how many beds remained uncleaned at the end of Plaintiff's shift and

promised Plaintiff that he would rescind the 2nd Progressive Counseling. However, he never did, and this 2nd Progressive Counseling was later used as a basis for Plaintiff's termination.

33. Upon information and belief, neither Kritzia nor Josie were written up by Mr. Ilhe for slow bed turnover times, despite their turnover times being worse than Plaintiff's.

34. In or around November 2019, shortly after Plaintiff first complained to Defendant about Mr. Ilhe's discriminatory conduct, Mr. Ilhe began planning to terminate Plaintiff and even interviewed applicants to replace her. Almost all of those applicants were in their late 20s or early 30s and substantially younger than Plaintiff.

35. In or around December 2019, Josie separated from her employment.

36. After interviewing several applicants, Mr. Ilhe recommended that Gracen Sutters, a male in his late 20s or early 30s, be hired to replace Josie as 2nd shift Operations Manager. At Mr. Ilhe's direction and urging, Defendant hired Mr. Sutters in or around December 2019.

37. On January 17, 2020, Mr. Ilhe again singled-out Plaintiff for discipline. Ms. Velez, at the direction of Mr. Ilhe, issued Plaintiff a Final Progressive Counseling for failing to record her rounds in the Emergency Room logbooks during her shifts on January 13th and 14th.

38. The other two (2) Operations Managers, Kritzia and Mr. Sutters, also did not regularly record their rounds in the ER logbooks, as demonstrated by the logbooks themselves. However, Mr. Ilhe did not direct Ms. Velez to write them up or discipline them in any other way.

39. Following her Final Progressive Counseling, Plaintiff underwent her annual performance review. As part of her yearly evaluation, Plaintiff received a 1.5% raise while the other Operations Managers received a raise of 3% or more.

40. Following her annual review, on or about January 20, 2020, Plaintiff called Defendant's Regional Director, Thad Vavrock, and complained about Mr. Ilhe's discrimination towards her because of her age and race. When Plaintiff told Mr. Vavrock that she planned on calling Defendant's corporate Human Resources hotline, he told Plaintiff not to do that and to wait for a call from Defendant's Human Resources representative, Heather Herzog.

41.     Plaintiff spoke to Ms. Herzog on the telephone later that day and complained to her about Mr. Ilhe's discrimination towards her because of her age and race. Ms. Herzog told Plaintiff that she will be at LVH later that week to speak with her in person.

42.     Two (2) days later, Plaintiff met with Ms. Herzog in person at LVH and, again, complained about Mr. Ilhe's discrimination towards her because of her age and race.

43.     Neither Ms. Herzog nor any other employee of Defendant performed any investigation into Plaintiff's complaints of discrimination.

44.     Upon information and belief, Mr. Ilhe was aware of Plaintiff's complaints regarding his discriminatory conduct.

45.     On March 23, 2020, at the request of Mr. Ilhe and Ms. Velez, Plaintiff began working 2nd shift again because, in Mr. Ilhe's words, it was "falling apart." Plaintiff was re-assigned to 2nd shift to assist Mr. Sutters, the 2nd shift Operations Manager, who was inexperienced and overwhelmed.

46.     On March 30, 2020, Mr. Ilhe emailed Plaintiff and Mr. Sutters and instructed them to, among other tasks, terminally clean a particular cancer infusion room following a sewer leak.

47.     At 2:53 a.m. on March 31, 2020, Mr. Sutters emailed Mr. Ilhe that the infusion room had been terminally cleaned.

48.     Later that morning, Mr. Ilhe was informed that the infusion room was not fully cleaned. As it turned out, the room was fully cleaned with the exception of a few drops of liquid next to the sink that were not cleaned. The area was quickly cleaned in the morning on March 31, 2020.

49.     When Mr. Ilhe questioned Plaintiff and Mr. Sutters about the issue, Plaintiff told him that she went in to check the infusion room, but that, as she entered, she heard a voice and a strange noise and left scared without fully checking the room.

50.     Plaintiff was off on Saturday, April 4, 2020 and Sunday, April 5, 2020. She spent the weekend in New York with her daughter.

51. On April 6, 2020, Plaintiff returned to work. When she arrived at 2:00 pm, Mr. Ilhe called her into his office and told her that, because she just returned from New York, she will need to quarantine for two (2) weeks.

52. As she was about to leave, Mr. Ilhe told Plaintiff that she was suspended, without pay, because of the infusion room cleaning incident on March 30, 2020. In fact, he made her provide a written statement about what happened and why she did not fully check the infusion room. Then, in front of Ms. Velez, Kritzia, and another employee, Mr. Ilhe embarrassingly demanded that Plaintiff turn in her badge and keys.

53. On April 15, 2020, after receiving no update on her employment status, Plaintiff sent an email to Ms. Herzog inquiring about her status and complaining that she was being singled-out and discriminated against by Mr. Ilhe because of her race and age.

54. On April 20, 2020, just five (5) days after complaining about Mr. Ilhe's discriminatory conduct for a third time, Defendant, at the direction and urging of Mr. Ilhe, discharged Plaintiff.

55. On that same date, Ms. Velez, at Mr. Ilhe's direction, issued a Progressive Counseling noting that Plaintiff was terminated for the March 30, 2020 incident. Plaintiff was not asked to sign or acknowledge receipt of the counseling.

56. Mr. Ilhe recommended to Defendant's Human Resources department that Plaintiff be discharged.

57. Defendant's decision to discharge Plaintiff was made solely on the basis of Mr. Ilhe's recommendation.

58. Importantly, Mr. Sutters was not written up or disciplined for failing to ensure the infusion room was fully cleaned, even though he was the other Operations Manager on shift that evening and was directly told by Mr. Ilhe to ensure the infusion room was cleaned. In fact, Mr. Sutters was the person who emailed Mr. Ilhe in the early morning of March 31, 2020 and told him that the infusion room was cleaned.

59. Moreover, neither Kritzia, Mr. Sutters, nor the previous Operations Manager, Josie, were ever written up, suspended, disciplined, or discharged for minor cleaning oversights.

60. Shortly after Defendant discharged Plaintiff, it promptly replaced her with a new Operations Manager named Jordan, a male in his late 20s or early 30s and substantially younger than Plaintiff.

## COUNT I
### AGE-BASED DISCRIMINATORY DISCHARGE IN VIOLATION OF
### 29 U.S.C. § 623(a)(1), THE AGE DISCRIMINATION IN EMPLOYMENT ACT

61. Plaintiff incorporates by reference all preceding allegations as if same were set forth more fully at length herein.

62. At the time of her discharge, Plaintiff was sixty-one (61) years of age.

63. At the time of her discharge, Plaintiff was qualified for the position of Operations Manager.

64. On April 20, 2020, Defendant, solely at the direction and urging of Mr. Ilhe, discharged Plaintiff.

65. Following Plaintiff's discharge, Defendant, solely at the direction and urging of Mr. Ilhe, promptly replaced her with a male employee named Jordan who was in his late 20s or early 30s and substantially younger than Plaintiff.

66. Defendant, solely at the direction and urging of Mr. Ilhe, discharged Plaintiff because of her age.

67. Defendant's decision to discharge Plaintiff was not based on any reasonable factor other than Plaintiff's age.

68. Defendant's decision to discharge Plaintiff was not based on any factors independent of Mr. Ilhe's write-ups and his recommendation that Plaintiff be discharged.

69. Defendant discharged Plaintiff willfully or with reckless disregard for Plaintiff's rights under federal law.

Case 5:21-cv-01821-JMG   Document 1   Filed 04/20/21   Page 13 of 16

70. As a direct and proximate result of Defendant's decision to discharge her, Plaintiff suffered past and future lost wages and loss of earning capacity.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant and award the following relief:

 a. All back pay from April 6, 2020 through the date of judgment, plus pre- and post-judgment interest;

 b. Front pay from the date of judgment through a date deemed equitable and just by the court;

 c. Liquidated damages in an amount equal to the back pay award;

 d. All costs and reasonable attorney's fees; and

 e. Any other relief deemed proper and just.

## COUNT II
## RETALIATION IN VIOLATION OF
## 29 U.S.C. § 623(d), THE AGE DISCRIMINATION IN EMPLOYMENT ACT

71. Plaintiff incorporates by reference all preceding allegations as if same were set forth more fully at length herein.

72. On October 24, 2019, January 20, 2020, and April 15, 2020, Plaintiff made reasonable, good-faith complaints to Defendant of age discrimination by Mr. Ilhe.

73. On November 1, 2020, just eight (8) days after her first complaint, Defendant, at the direction and urging of Mr. Ilhe, suspended Plaintiff and wrote her up for an alleged infraction which did not occur and which Mr. Ilhe later admitted was erroneous.

74. On April 6, 2020, just ten (10) weeks after her second complaint, Defendant, at the direction and urging of Mr. Ilhe, suspended Plaintiff for a minor cleaning oversight.

75. On April 20, 2020, just five (5) days after her third complaint, Defendant, at the direction and urging of Mr. Ilhe, discharged Plaintiff.

10

76. Defendant, solely at the direction and urging of Mr. Ilhe, disciplined and discharged Plaintiff because she made reasonable, good-faith complaints against Mr. Ilhe of age discrimination.

77. Defendant's decision to discipline and discharge Plaintiff was not based on any legitimate, non-retaliatory reasons.

78. Defendant's decision to discipline and discharge Plaintiff was not based on any factors independent of Mr. Ilhe's write-ups and his recommendation that Plaintiff be discharged.

79. As a direct and proximate result of her discipline and discharge, Plaintiff suffered past and future lost wages and loss of earning capacity.

80. As a direct and proximate result of her discipline and discharge, Plaintiff suffered emotional distress, mental anguish, embarrassment, and financial insecurity.

81. Defendant discharged Plaintiff willfully, maliciously, or with reckless disregard for Plaintiff's rights under federal law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant and award the following relief:

    a. All back pay from April 6, 2020 through the date of judgment, plus pre- and post-judgment interest;

    b. Front pay from the date of judgment through a date deemed equitable and just by the court;

    c. Liquidated damages in an amount equal to the back pay award;

    d. All costs and reasonable attorney's fees; and

    e. Any other relief deemed proper and just.

**COUNT III**
**RETALIATION IN VIOLATION OF**
**42 U.S.C. § 2000e-3(a), TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

82. Plaintiff incorporates by reference all preceding allegations as if same were set forth more fully at length herein.

83. On October 24, 2019, January 20, 2020, and April 15, 2020, Plaintiff made reasonable, good-faith complaints of race discrimination by Mr. Ilhe.

84. Just eight (8) days after her first complaint, on November 1, 2020, Defendant, at the direction and urging of Mr. Ilhe, suspended Plaintiff and wrote her up for an alleged infraction which did not occur and which Mr. Ilhe later admitted was erroneous.

85. Just ten (10) weeks after her second complaint, on April 6, 2020, Defendant, at the direction and urging of Mr. Ilhe, suspended Plaintiff again for a minor infraction.

86. Just five (5) days after her third complaint, on April 20, 2020, Defendant, at the direction and urging of Mr. Ilhe, discharged Plaintiff.

87. Defendant, solely at the direction and urging of Mr. Ilhe, discharged Plaintiff because she made reasonable, good-faith complaints against Mr. Ilhe of race discrimination.

88. Defendant's decision to discipline and discharge Plaintiff was not based on any legitimate, non-retaliatory reasons.

89. Defendant's decision to discipline and discharge Plaintiff was not based on any factors independent of Mr. Ilhe's write-ups and his recommendation that Plaintiff be discharged.

90. As a direct and proximate result of her discipline and discharge, Plaintiff suffered past and future lost wages and loss of earning capacity.

91. As a direct and proximate result of her discipline and discharge, Plaintiff suffered emotional distress, mental anguish, embarrassment, and financial insecurity.

92. Defendant discharged Plaintiff willfully, maliciously, or with reckless disregard for Plaintiff's rights under federal law.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendant and award the following relief:

    a. All back pay from April 6, 2020 through the date of judgment, plus pre- and post-judgment interest;

    b.      Front pay from the date of judgment through a date deemed equitable and just by the court;

    c.      Compensatory damages in an amount to be determined by a jury;

    d.      Punitive damages in an amount to be determined by a jury;

    e.      All costs and reasonable attorney's fees; and

    f.      Any other relief deemed proper and just.

## DEMAND FOR JURY TRIAL

**PLEASE TAKE NOTICE** that Plaintiff LUISA ALFARO hereby demands a trial by jury for all claims so triable.

*Respectfully Submitted,*

**MANSOUR LAW, LLC**

Date: April 20, 2021      BY: *William P. Mansour*

William P. Mansour, Esquire
Pa. Attorney ID No. 318833
**Mansour Law, LLC**
1101 W. Hamilton St., Ste. 205
Allentown, PA 18101
Tel: (610) 321-3538
Fax: (610) 798-1345
Email: wpm@themansourfirm.com

Attorney for Plaintiff Luisa Alfaro